**James W. LOEWEN et al., Plaintiffs,**

v.

**John TURNIPSEED, Mississippi State Textbook Purchasing Board et al., Defendants.**

**No. GC 75–147–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Aug. 21, 1980.

Post Judgment Motions Jan. 5, 1981.

As Amended Jan. 20, 1981.

Peter M. Stockett, Jr., Asst. Atty. Gen., for the State of Miss., Jackson, Miss., for defendants.

Frank R. Parker, Lawyers' Committee for Civil Rights, Jackson, Miss., for plaintiffs.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the plaintiffs' motion for an award of attorney's fees and litigation expenses, pursuant to 42 U.S.C. § 1988. The record in this case reveals that a nonjury trial was conducted from August 27, 1979, to September 6, 1979, and the case was then taken under advisement. On April 2, 1980, the court issued a Memorandum of Decision, concluding that the plaintiffs were entitled to a substantial amount of their requested injunctive relief. *Loewen v. Turnipseed*, 488 F.Supp. 1138 (N.D.Miss.1980). In its order and injunction of April 2, 1980, the court found that the plaintiffs, as prevailing parties, were entitled to an award of attorney's fees and expenses. The final judgment in this action was entered on August 5, 1980, and the question of the amount of fees and expenses to be awarded to the plaintiffs is now ready for disposition.

## I. *ATTORNEY'S FEES.*

As the record indicates, the court has previously held that the plaintiffs are entitled to an award of fees and expenses, as part of the costs of this action. 488 F.Supp.

at 1156. There is no dispute, therefore, surrounding the fact that the plaintiffs are prevailing parties within the meaning of § 1988. Additionally, there are not "special circumstances" in this action which would render the award unjust. *See Knighton v. Watkins*, 616 F.2d 795, 798 (5th Cir. 1980); *Bunn v. Central Realty of Louisiana*, 592 F.2d 891, 892 (5th Cir. 1979). The only issue to be resolved, therefore, is what amount will constitute a "reasonable attorney's fee." The statute authorizes the court to exercise its discretion in this regard. In doing so, however, there must be some objective criteria which will guide the court, and the court should articulate its reasons for the award so that its discretion may be reviewed according to these criteria. *See Davis v. Fletcher*, 598 F.2d 469, 470 (5th Cir. 1979).

Since 1974, the Fifth Circuit has "required an attorney's fee award to be accompanied by an explanation of the factors contributing to the decision." 598 F.2d at 470. The now–familiar factors which the court is to consider are stated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve criteria enumerated in that case have been considered by this court and will be taken into account in the award of attorney's fees. In doing so, the court is mindful of the Fifth Circuit's admonition that the court should "guard against mulcting defendants," and at the same time "take care against parsimony to prevailing counsel." *Knighton v. Watkins*, 616 F.2d at 800.

### A. *Time and Labor Required.*

Plaintiffs' counsel have submitted affidavits in support of the motion, which list the number of hours spent by each attorney, and the work performed during those hours. The description of the work is not detailed, but only categorizes the work into general areas. It is apparent that these lists of hours are not the actual time records kept by counsel, but are instead estimates of the amount of work performed. The records themselves are not provided.

In *Johnson*, the Fifth Circuit stated that the trial court should "weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." 488 F.2d at 717. This case is now approximately five years old. It was tried one year ago, and most of the hours spent by counsel were during the pretrial stage. There was, necessarily, a substantial amount of work to be done, for the parties, class members, and experts, as well as the attorneys. The affidavit of Mr. Leventhal shows that he represented the plaintiffs from November, 1974, to September, 1977, two years before the trial of the case. He lists a total of 254.25 hours expended on the case. The total number of hours claimed by all counsel during this five–year period is 832.5. To put that figure into more practical terms, the total number of hours expended is equal to 104 eight–hour working days. The court has no doubt that counsel's affidavits are accurate, and the number of hours is not questioned. It must be remembered, however, that the court is to consider its own knowledge and experience in cases of this nature. Based upon its knowledge of the case, and the amount of work reasonably required to achieve the results which counsel achieved, the court is of the opinion that 832.5 hours is an unreasonable and exorbitant amount.

The court must take into account the fact that the plaintiffs were represented by different attorneys at various stages of the litigation. Under these circumstances, it is reasonable to expect that counsel's efforts in some areas overlapped, and that there was repetition and duplication of effort. Similarly, it is reasonable to expect that when two or more attorneys were present at one time, their services duplicated one another to a certain extent. The court has considered these factors, as well as the fact that counsel's affidavits reflect estimates, rather than the actual records. The amount of hours expended by each attorney will be reduced by 10% to reflect these factors, and the court concludes that a reasonable amount of time spent by all of plaintiffs' counsel would not exceed 750 hours.

B. *Novelty and Difficulty of the Question.*

As the Fifth Circuit stated in *Johnson*, counsel "should be appropriately compensated for accepting the challenge" of cases involving novel issues. This action had some unique aspects to it, but the court cannot say that the issues were in any way novel or difficult. *See Loewen v. Turnipseed*, 488 F.Supp. at 1150. The action was based upon the defendants' conduct in depriving the plaintiffs of their rights under the first and fourteenth amendments. The cause of action was founded upon 42 U.S.C. § 1983. While the case was unique in the sense that it may have been the first to apply certain legal principles to the particular fact situation involved, counsel should not be compensated at a higher rate for that reason alone. It cannot be said that, simply because the fact situation was unique, counsel were without any legal precedents to support their case. "Actions involving the civil rights statutes . . . merely by their number alone, indicate that this litigation did not involve novel or difficult questions." *Crowe v. Lucas*, 479 F.Supp. 1258, 1261 (N.D.Miss.1979).

C. *The Skill Requisite to Perform the Legal Services Properly.*

During the eight days of trial in this case, the court had the opportunity to observe the plaintiffs' attorneys. Their work product, preparation, and skill in the courtroom demonstrated that their representation was more than adequate. Taking into consideration this court's past experiences and observations from the bench, the court concludes that counsel for plaintiffs possessed the requisite skill to perform the necessary services properly. This was not the first case in which counsel appeared before the court, nor was it the first of its kind in which they were involved.

D. *The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.*

In his affidavit, Mr. Parker submits that since this case required a great deal of his

time, he was thereby precluded from accepting other fee–generating cases. This is surely accurate to a certain extent, but it must also be remembered that this is not the typical situation presented by a private attorney accepting a client's case. Mr. Parker, Ms. Phillips, and Mr. O'Rourke are staff attorneys for the Lawyers Committee for Civil Rights Under Law. At the time of his involvement in this action, Mr. Leventhal was staff counsel for the NAACP Legal Defense Fund. The fees awarded in this action will not go to the attorneys personally, but will be awarded to these organizations. There is no indication that the organizations were precluded from other employment by the fact that some of their staff attorneys undertook this protracted litigation.

### E. The Customary Fee.

The compensation requested by plaintiffs' attorneys varies from a rate of $100 per hour to $50 per hour, the difference in rates for each attorney depending presumably upon his or her experience. *Johnson* does indeed require the court to look at the skill and experience of the attorney. However, in this regard, *Johnson* also "commands attention to customary fees in the locality." *Knighton v. Watkins*, 616 F.2d at 800. In *Knighton*, the Fifth Circuit warned the district courts against imposing "an inflexible maximum" rate, and held that the court should consider this factor by "taking into account the customary fees private counsel usually charge for similar work, as demonstrated by the testimony and its own knowledge of local conditions. . . ." 616 F.2d at 800. It is clear, therefore, that the court is still authorized to exercise its discretion in fixing compensation.

Plaintiffs' attorneys have presented no evidence which indicates the customary fee for litigation of this nature in this district. Counsel cites two cases as evidence that a reasonable hourly rate is $75. First, counsel attaches a copy of the minutes of the Special Joint Legislative Committee on Reapportionment, held on August 16, 1977. At that meeting, the Committee retained special counsel, in a reapportionment case in the Southern District of Mississippi, at the rate of $75 per hour. This contractual arrangement is entirely irrelevant to proof of the customary fee in this district. Secondly, counsel cites this court to an order approving a settlement in *Wade v. Mississippi Cooperative Extension Service*, No. EC 70–29–K, in which Chief Judge Keady approved an award of attorney's fees at the rate of $75 per hour. This order is evidence only of the agreement reached by the parties in that case; it has no bearing on the amount of the customary fee in this district.

Being presented with no relevant evidence of the customary fee, the court must use "its own knowledge of local conditions. . . ." 616 F.2d at 800. The court is of the opinion that $50 per hour is a reasonable amount, consistent with the customary fee which private counsel usually charge for similar work.

### F. Whether the Fee is Fixed or Contingent.

Counsel for plaintiffs contend that this action was a contingent fee case, because the civil rights organizations involved here are dependent upon court awards of attorney's fees. The individual attorneys are on the staffs of these organizations, and are, therefore, paid a salary. An award of fees to the organization itself, however, is "contingent" upon the plaintiffs being the prevailing party under § 1988. The court does not believe that the nature of the organization mandates a different treatment or consideration of this criterion. The court in *Johnson* discussed contingency fees in the context of the client's contract with the attorney. 488 F.2d at 718. In other words, the court should look at this relationship; if the attorney would not otherwise receive compensation for his efforts in the case, then the contingency factor may be quite relevant. Such is not the case here, for the attorneys have received compensation, in the form of a salary, regardless of the outcome of the case. Their compensation is in no way dependent upon their victory in court, and is, therefore, not contingent.

G. *Time Limitations Imposed by the Client Under the Circumstances.*

The facts in this case do not reveal that the client imposed any burdensome time limitations on counsel.

H. *The Amount Involved and the Results Obtained.*

As previously stated, there is no question that the plaintiffs are the prevailing parties in this case. Although no damages were awarded, the plaintiffs were quite successful in obtaining injunctive relief against the defendants. As the court concluded in its opinion, this was the "only method by which the court can assure that these plaintiffs' constitutional interests are protected...." 488 F.Supp. at 1155. In this regard, plaintiffs' counsel were successful in obtaining the relief necessary to vindicate the plaintiffs' constitutional rights. It should also be pointed out that this injunctive relief benefited the entire class which the plaintiffs represented.

I. *The Experience, Reputation, and Ability of the Attorneys.*

This action is not the first one in which plaintiffs' counsel have appeared before the court. During the term of this action, they were all quite active in the area of civil rights litigation, and they have been successful in many such cases, before this court and others. During the trial of this case, they demonstrated a high degree of skill and capability.

J. *The "Undesirability" of the Case.*

Counsel for plaintiffs states that it has been his experience that "members of the established bar [in Mississippi] are normally not willing to take on controversial civil rights cases such as this one." However, this is not what *Johnson* means when it refers to the undesirable nature of a case. *Johnson* commands the court to look at the "hardships" which attorneys might face "in their communities because of their desire to help the civil rights litigant." 488 F.2d at 719. It is not that the case would be undesirable to other members of the bar; rather, the question is whether or not plaintiffs' counsel experienced difficulties or hardships in his community because he took the case. Surely it cannot be said that private civil rights organizations such as the ones here, dedicated to a "desire to help the civil rights litigant," would find a case of this importance to be undesirable.

K. *The Nature and Length of the Professional Relationship with the Client.*

Counsel have not represented the plaintiffs previously, and this criterion is, therefore, irrelevant.

L. *Awards in Similar Cases.*

The judges in this district are quite familiar with awards of attorney's fees under § 1988. Over a period of several years, this court has made awards in many civil rights cases, the amount of which reflected the prevailing rate which was in existence at that particular time. *See Willey v. Maben Manufacturing Co.,* 487 F.Supp. 1369 (N.D. Miss.1979); *Crowe v. Lucas,* 479 F.Supp. 1258 (N.D.Miss.1979); *Cole v. Tuttle,* 462 F.Supp. 1016 (N.D.Miss.1978); *Armstrong v. Reed,* 462 F.Supp. 496 (N.D.Miss.1978); *Peacock v. Drew Municipal Separate School District,* 433 F.Supp. 1072 (N.D.Miss.1977); *Norwood v. Harrison,* 410 F.Supp. 133 (N.D. Miss.1976); *Latham v. Chandler,* 406 F.Supp. 754 (N.D.Miss.1976); *Ayers v. Western Line Consolidated School District,* 404 F.Supp. 1225 (N.D.Miss.1975); *Armstead v. Starkville Municipal Separate School District,* 395 F.Supp. 304 (N.D.Miss. 1975); *Neely v. City of Grenada,* 77 F.R.D. 484 (N.D.Miss.1978); *Davis v. Reed,* 72 F.R.D. 644 (N.D.Miss.1976).

The court concludes that the plaintiffs are entitled to an award of attorney's fees as follows:

1. To the NAACP Legal Defense Fund, for services of Melvyn R. Leventhal, based on 229 hours at the rate of $50 per hour ....... $11,450

2. To the Lawyers Committee for Civil Rights Under Law, for the services of:

 a. Frank R. Parker, based on 374.5 hours at the rate of $50 per hour ............. 18,725

b. Barbara Phillips, based on 127 hours at the rate of $50 per hour ............. 6,350

c. Patrick O'Rourke, based on 19.5 hours at the rate of $50 per hour ............. 975

Subtotal $26,050

Total fees awarded $37,500

The award is made against the defendants in their official capacities only, and will be satisfied out of state funds. *See Gates v. Collier*, 616 F.2d 1268, 1270–71 (5th Cir. 1980).

## II. *EXPENSES.*

It may be quite natural for litigants and their attorneys to expect that, along with an award of reasonable attorney's fees, a court will also include reimbursement for litigation expenses. There is little authority on this subject; neither § 1988 nor its legislative history state that out–of–pocket expenses are to be included in an award. The statute says that attorney's fees are to be awarded as part of the costs. There is no stated intention on the part of Congress that all costs in general are to be liberally awarded. The Fifth Circuit has recently stated that "there is nothing in the legislative history of § 1988 which even remotely suggests that the treatment of out–of–pocket costs should in any way change as a result of the enactment of § 1988." *Gates v. Collier*, 616 F.2d at 1279 n.17. This is of little help, however, for it is not clear what the treatment of expenses was before the enactment of § 1988.

█ If the allowance of certain expenses is to be treated similarly to the taxation of costs, pursuant to 28 U.S.C. § 1920, and Rule 54(d), Fed.R.Civ.P., then it must be recognized that the matter is within the broad discretion of this court. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). The court is "free to pursue a case–by–case approach and to make [its] decisions on the basis of the circumstances and equities of each case...." 10 C. Wright & A. Miller, Federal Practice and Procedure § 2668, at 142 (1973). With respect to those expenses "not specifically allowed by statute," the Supreme Court has stated that the judge's discretion should be "sparingly exercised." 379 U.S. at 235, 85 S.Ct. at 416. *See also, Sperry Rand Corp. v. A–T–O, Inc.*, 58 F.R.D. 132, 135–36 (E.D.Va.1973). In light of this admonition from the Supreme Court, it is clear that there must be some point at which a party, even a prevailing party under § 1988, must absorb at least some of his own costs. The same principle is true for counsel. According to some of the criteria established in *Johnson*, an award of reasonable attorney's fees should reflect the compensation normally paid to private attorneys for similar work. It is generally not the normal practice of an attorney, however, to bill his client for every expense incurred by the attorney in connection with the litigation. He must absorb some of the costs of doing business as an attorney. It should not be expected, therefore, that a court will award him those costs which he would otherwise have borne himself. In the opinion of the court, an award of out–of–pocket expenses should be limited to those expenses which an attorney would normally, customarily, and routinely bill to a fee–paying client.

In addition, the court is guided by the criteria established in 28 U.S.C. § 1920, wherein it is stated that fees for transcripts and copies of papers may be taxed as costs, but only if they were "necessarily obtained for use in the case." This standard has been interpreted to mean, with particular regard to transcripts, that the expense "must have a direct relationship to the determination and result of the trial." Wright & Miller, *supra* § 2677, at 210. *See also, Berner v. British Commonwealth Pac. Airlines, Ltd.*, 362 F.2d 799 (2d Cir.), *cert. denied*, 385 U.S. 948, 87 S.Ct. 322, 17 L.Ed.2d 227 (1966); *Chemical Bank v. Kimmel*, 68 F.R.D. 679 (D.Del.1975). In other words, the costs to be taxed under § 1920 must not be expenses incurred simply for the convenience of counsel.

## A. Bill of Costs.

Plaintiffs submitted a bill of costs, in the amount of $3,404.29, on May 13, 1980. Costs were taxed by the clerk, in accordance with Rule 54(d), on May 14, 1980. The defendants filed no objection to the taxation of costs, and have not asked this court to review the bill. Rule 54(d) provides that "[o]n motion served within 5 days [after the taxation of costs], the action of the clerk may be reviewed by the court." (Emphasis added.) While the language of this rule certainly provides the court with discretion upon a review of the bill of costs, it does not allow the court to undertake such a review sua sponte. Therefore, the bill of costs will be allowed in the amount of $3,404.29. In reviewing plaintiffs' request for reimbursement of other expenses, however, the court should insure that there is no duplication with the bill of costs.

## B. Other Litigation Expenses.

 The attorneys have also submitted requests for reimbursement of certain expenses, together with receipts or copies of checks. The court has examined these itemizations, and has determined that some of the expenses will not be allowed. First, one of the plaintiffs, Dr. James W. Loewen, seeks reimbursement for litigation expenses in the amount of $1,979.53. There is nothing in the record to indicate that Dr. Loewen is indigent, or that he did not undertake to incur these expenses voluntarily. The court is of the opinion that nothing in the legislative history of § 1988 allows the award of expenses, such as those listed by Dr. Loewen, to a litigant in the case. As one court has stated, these "expenses are not authorized by the Civil Rights Attorney's Fees Awards Act of 1976 and do not come within the definition of costs as that term is used in the Federal Rules of Civil Procedure." Skehan v. Board of Trustees of Bloomsburg State College, 436 F.Supp. 657, 667 (M.D.Pa.1977). The litigation expenses of Dr. Loewen will be disallowed.

On behalf of the NAACP Legal Defense Fund, Mr. Leventhal claims expenses in the amount of $2,113.01. The court finds some of these expenses, such as deposition expenses and fees for the United States Marshal, to be duplicative of those taxed as costs. They will, therefore, be disallowed. Other expenses, in the nature of travel, depositions not listed on the bill of costs, and expert fees, will be allowed. There is, however, one entry for "research" in the amount of $250.00 which is undocumented. The court does not know the nature of the research or whether it was reasonably and necessarily connected with the case. This expense will be disallowed.

On behalf of the Lawyers Committee for Civil Rights Under Law, Mr. Parker claims expenses in the amount of $5,123.27. Certain items of this total amount, such as postage and private express mail service, will be disallowed on the grounds that such expenses are generally considered overhead, or part of the cost of operating a law firm. See, e. g., Crowe v. Lucas, 479 F.Supp. at 1263.

The travel expenses listed are those which a private practitioner would normally and routinely bill to his client, and they appear to be related to the trial of this case. They will be allowed except for the amount of $269.36, which represents undocumented mileage for certain named plaintiffs. While they certainly had the right to attend the trial of the case, doing so was at their discretion, and this expense will, therefore, be disallowed.

The expenses for meals and lodging are in the amount of $1,851.45. Most of these expenses are claimed for the two-week period during which the case was tried. The motel bill for one week, however, is $469.68; the expense voucher lists this as accommodations for attorneys and witnesses. The witnesses have been paid a travel expense and a subsistence allowance provided by statute. Any further allowance would be a duplication of the amount to which they are reasonably and lawfully entitled. Since there is no reasonable way by which the court can divide this voucher between expenses for attorneys and expenses for witnesses, the court will award the two attorneys who tried this case a per diem allow-

ance of $35. Other lodging and meal expenses, incurred at other times during the course of this litigation, will be allowed, for a total of $683.56.[1]

Expenses for copying and xeroxing, in the amount of $557.54, will be allowed. Counsel also claims reimbursement for the purchases of books, particularly the plaintiffs' own book, in the amount of $232.08. The court does not believe it to be reasonable that the defendant should be made to reimburse the plaintiffs for purchases by the plaintiffs of the plaintiffs' own book. Nor is it reasonable to reimburse counsel for the purchase of books related to research, which may have become additions to counsel's library. This expense will be disallowed.

Consultant and expert witness fees in the amount of $700 will be allowed,[2] but fees paid for research, where the nature of the research and its relationship to this case are not shown, will not be allowed. Finally, telephone expenses will be allowed in the amount of $150.00

To summarize, the bill of costs in the amount of $3,404.29 will be approved in the

1. This amount may be broken down as follows:
 a. For Frank R. Parker's meals and lodgings at the trial, $35 per day for 8 days ....................... $280.00
 b. For Barbara Phillips' meals and lodgings at the trial, $35 per day for 8 days ....................... 280.00
 c. Expenses for attendance at pretrial conference ...................... 90.22
 d. Meal expenses dated 2/28/79 ..... 9.08
 e. Meal expenses dated 2/15/80 ..... 24.26

The court is of the opinion that the $35 is a reasonable one, since it is the amount paid to court personnel for holding court away from home, 5 U.S.C. § 5702(a), and is more than the amount allowed to witnesses, 28 U.S.C. § 1821.

2. This amount comprises a $250.00 consultant fee to Dr. Ted Kilty, and a $450.00 expert witness fee, also to Dr. Kilty. The fees requested for research, as previously stated in the text, will be disallowed.

3. The amount of $857.46 was calculated by deducting from the total amount requested ($2,113.01), those amounts which were already taxed as costs in the bill of costs, and the

face of no objection, and the following additional expenses will be awarded:

| | |
|---|---|
| NAACP Legal Defense Fund .............. | $ 857.46[3] |
| Lawyers' Committee for Civil Rights Under Law .. | 3,000.06[4] |
| Total | $ 3,857.52 |

## III. RECAPITULATION OF AWARD.

A. Attorney's Fees.

| | | |
|---|---|---|
| 1. NAACP .......... | $11,450.00 | |
| 2. Lawyers' Committee | 26,050.00 | |
| Subtotal | | $37,500.00 |

B. Expenses.

| | | |
|---|---|---|
| 1. NAACP .......... | 857.46 | |
| 2. Lawyers' Committee | 3,000.06 | |
| Subtotal | | 3,857.52 |

C. Bill of Costs ......... 3,404.29

TOTAL AWARD .... $44,761.81

An order will be entered accordingly.

$250.00 expense for "research", which, as stated in the opinion, is undocumented. The amount of $857.46 may be summarized as follows:
 a. Mr. Leventhal's mileage and travel expenses for taking various depositions ....................... $645.96
 b. Depositions of Burney and Wilder .. 161.50
 c. Consultant fee .................. 50.00
 
 Total $857.46

4. The amount of $3,000.06 was calculated by deducting from the total amount requested ($5,123.27), the amounts excluded for the reasons stated in the text of the opinion. The amount of $3,000.06 may be summarized as follows:
 a. Meals and lodging (see footnote 1, supra) ....................... $683.56
 b. Travel expenses .............. 908.96
 c. Copying ..................... 557.54
 d. Consultants and expert witness fees .......................... 700.00
 e. Telephone.................... 150.00
 
 Total $3,000.06

## POST JUDGMENT MOTIONS

ORMA R. SMITH, District Judge.

The court released August 21, 1980, its Memorandum of Decision and entered its order awarding plaintiffs, as the prevailing parties, attorney's fees pursuant to 42 U.S.C. § 1988. The court awarded the NAACP Legal Defense Fund the sum of $11,450, and the Lawyers' Committee for Civil Rights Under Law, the sum of $26,050, or an aggregate fee for plaintiffs' attorneys amounting to $37,500.00.

Plaintiffs' counsel filed with the Clerk of the Court, on September 2, 1980, pursuant to Rule 59, Fed.R.Civ.P., plaintiffs' motion to alter or amend judgment for attorneys' fees and litigation expenses. The motion was filed on the 12th day after the release of the Memorandum and Order. These were mailed, however, from the court's chambers at Corinth, Mississippi, to the clerk's office at Greenville, Mississippi, and were received on the 25th day of August, 1980. No controversy exists as to the timely filing of the motion. The court will accept the filing on September 2, 1980, as being timely.

The motion seeks an order increasing the hourly rate used by the court in computing the amount of the award for attorneys' fees.[1] Plaintiffs rely upon the decision of the United States Court of Appeals for the Fifth Circuit released on August 20, 1980, in *Neely v. City of Grenada*, 624 F.2d 547. *Neely* involved an award of attorneys' fees by Chief Judge William C. Keady of this court, in the case of *Jasper Neely et al. v. The City of Grenada*, No. WC 74–33–K. Judge Keady's opinion is reported in 77 F.R.D. at 484. (N.D.Miss.1978).

On September 5, 1980, counsel for plaintiffs mailed from their Jackson, Mississippi, office to the clerk's office in Greenville, affidavits of four Mississippi attorneys attesting to the customary fee prevailing in the courts of the district for services rendered in civil rights litigation. These attorneys had made affidavits in the *Neely* case. The affidavits were received by the clerk on September 8, 1980. The affidavits are quoted verbatim in footnote 4 of the opinion at pages 550–551. The affidavits tendered this court in support of the motion for post judgment relief are, in all respects, similar to the ones presented to Judge Keady in *Neely*.

Defendants have moved to strike these affidavits. The court finds the motion well taken. Rule 59(e), Fed.R.Civ.P., provides in pertinent part, "[A] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment". The court is not permitted to extend the time in which such a motion may be filed. Rule 6(b), Fed.R.Civ.P.; Vol. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2817, at page 109. The pending motion was timely filed but affidavits in support thereof were not filed until six days later.

Rule 6(d), Fed.R.Civ.P., provides in pertinent part, "[W]hen a motion is supported by affidavit, the affidavit *shall* be served with the motion." (Emphasis supplied). The rule is mandatory. The affidavits were not filed with the motion as the rule requires and must be stricken.

There are yet other reasons why the affidavits should not be considered at this juncture of the action. Affiants are mem-

---

1. The motion recites:

Plaintiffs, by their attorneys, respectfully move the court pursuant to Rule 59, Fed.R. Civ.P., to alter or amend its Order of August 21, 1980, awarding plaintiffs their attorneys' fees and litigation expenses in this action to award lead counsel for the plaintiffs fees at an hourly rate of $100 per hour, or alternatively, at an hourly rate of not less than $75 per hour, based on the recent decision of the United States Court of Appeals for the Fifth Circuit in *Neely v. City of Grenada* [5 Cir.,

624 F.2d 547] No. 78–1762 (5th Cir. August 20, 1980), and to enhance the fee award to compensate plaintiffs for the novelty and difficulty of the issues presented, the high degree of skill and ability demonstrated by counsel for the plaintiffs, the contingent nature of the attorneys' fees recovery, the class relief obtained, the experience, reputation, and ability of lead counsel for the plaintiffs, and to more accurately reflect awards in similar cases within and without this Circuit.

bers of the same Bar as counsel for plaintiffs, and a large part of their practice is civil rights litigation. Counsel offer no just reason or excuse why the affidavits could not have been obtained and presented for the court's consideration at the time the motion for allowance of attorneys' fees and expenses was before the court for its determination. Should the court elect to consider the affidavits, justice would require that the issue be reopened to afford defendants an opportunity to respond. The court does not elect to reopen the matter.

On October 17, 1980, plaintiffs filed another motion for leave to supplement the record, proposing to submit two affidavits which had been presented in cases pending in the United States District Court for the Southern District of Mississippi, and which had been brought to the attention of plaintiffs' counsel. There was also submitted with the motion a copy of the court's opinion in *Abadir & Co., et al. v. First Mississippi Corp.*, Civil Action No. J76–398(N) (S.D. Miss., April 28, 1980). The same reasons which prompted the court to sustain defendants' motion to strike the affidavits presented by plaintiffs' counsel with the motion to alter or amend the judgment, lead the court to find that the motion for leave to supplement the record should be denied.

After a full consideration of the merits of plaintiffs' motion to Alter or Amend the Judgment of August 21, 1980, on the record made on submission, as the same relates to an award of attorneys' fees for the services of attorneys Leventhal and Parker, the court has reached the conclusions that the *Johnson*[2] Standards, as discussed in numerous decisions of the Fifth Circuit, require some adjustment, in order to provide for a more adequate fee. Accordingly, the hourly rate upon which the award is based is increased by 50% making the hourly rate in each instance the sum of $75.00 per hour.

---

2. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The award is modified to provide:

| | |
|---|---:|
| 1. To the NAACP Legal Defense Fund, for services of Melvyn R. Leventhal, based on 229 hours at the rate of $75.00 per hour | $17,175.00 |
| 2. To the Lawyers Committee for Civil Rights Under Law, for the services of: | |
| a. Frank R. Parker, based on 374.5 hours at the rate of $75.00 per hour | 28,087.50 |
| b. Barbara Phillips, based on 127 hours at the rate of $50.00 per hour | 6,350.00 |
| c. Patrick O'Rourke, based on 19.5 hours at the rate of $50.00 per hour | 975.00 |
| Total fees awarded | $52,587.50 |

An amended judgment will be entered.