**In re MEDIA VISION TECHNOLOGY SECURITIES LITIGATION.**

**This Document Relates To: All Actions.**

**Master No. C–94–1015 EFL.**

United States District Court,
N.D. California.

Jan. 23, 1996.

Darryl P. Rains, Morrison & Foerster, San Francisco, CA, for Steven J. Allen.

Alan Schulman, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for David J. Andrews.

James M. Finberg, Lieff Cabraser Heimann & Bernstein, San Francisco, CA, for Anthony J. Burlando.

Jared L. Kopel, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Cowen & Company.

Mary T. Huser, McCutchen Doyle Brown & Enersen, San Francisco, CA, for Ernst & Young.

Walter J. Robinson, Pillsbury Madison & Sutro, San Francisco, CA, for Russell C. Faust.

Douglas R. Young, Farella Braun & Martel, San Francisco, CA, for Michael Humphress.

Paul H. Dawes, Latham & Watkins, San Francisco, CA, for Paul C. Jain.

Steven E. Cauley, Wright & Bonds, Little Rock, AR, for Sidney Weinstein.

### *ORDER*

LYNCH, District Judge.

This Court referred to Chief Magistrate Judge Langford the application of plaintiffs' counsel for costs and expenses incurred in the partial settlement of this action. After conducting a hearing and requesting and receiving additional documentation, Chief Magistrate Judge Langford issued his Findings and Recommendations on December 15, 1995. No party has objected.

The Court has reviewed the Findings and Recommendations, and agrees with the general guidelines set forth therein regarding which expenses should be awarded, which should be discounted, and which should be denied. The matter is therefore REFERRED to Chief Magistrate Judge Langford for calculation of the amounts to be awarded following those guidelines. Chief Magistrate Judge Langford is requested to issue Findings and Recommendations detailing the amounts to be awarded to each of the law firms seeking reimbursement.

Furthermore, the Court shares Magistrate Judge Langford's great concern about the excessive costs sought as reimbursement, particularly with respect to travel, meals, and accommodations. Counsel should be guided by an awareness of these concerns in seeking any future award of costs, and should be aware that the Court will not award reimbursement for excessive expenditures.

Finally, in keeping with Chief Magistrate Judge Langford's recommendation, plaintiffs' counsel are ordered to submit all future applications for costs and expenses in a detailed format, breaking down the amount requested and outlining the necessity of each expense. Counsel are further ordered that to the extent that counsel anticipate seeking reimbursement for extensive travel or extensive use of nonlegal experts, they should inform the Court prior to incurring those expenses. As the Court has previously ordered, plaintiffs' counsel may submit information about their unusual expenditures ex parte and under seal, and the Court will determine whether the information should remain under seal.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS

LANGFORD, Chief United States Magistrate Judge.

Plaintiffs' counsel's application for costs and expenses was referred to this Court for findings and recommendations by order of the District Court (Hon. Eugene F. Lynch). Plaintiffs' counsel filed this application for costs and expenses incurred to date and for reservation of partial settlement proceeds for costs and expenses to be incurred in the future in connection with plaintiffs' claims against non-settling defendants [1], dated June 29, 1995. The application is based on plaintiffs' counsel's Notice, Memorandum of Points and Authorities and Declarations of plaintiffs' attorneys. Plaintiffs' counsel's argument having been fully considered and for good cause appearing, this Court makes the following findings and recommendations:

### BACKGROUND

On or about March 24, 1994, eighteen actions have been filed in the United States District Court for the Northern District of California as class actions on behalf of persons who purchased Media Vision common stock and debentures during a defined period of time. The actions were consolidated as *In re Media Vision Technology Securities Litigation*, Master by Stipulation and Order filed May 17, 1994 (the "Class Action").

The Operative complaint in this Litigation is the Second Amended Consolidated Complaint, filed on March 8, 1995 ("Complaint"). The Complaint asserts violations of Section 11, 12(2), and 15 of the Securities Act of 1933, Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder.

On November 10, 1994, plaintiffs filed a motion for class certification. On November 29, 1994, the court approved a Stipulation and Order. Plaintiffs have designated five persons to serve as class representatives.

A Stipulation of Settlement was entered into on September 22, 1995 (the "Stipulation"). The Stipulation was intended by the Settling Parties to fully resolve, discharge, and settle the Released Claim. The Settlement between the Settlement Class and the Settling Defendants and Media Vision's outside directors, the Settling Outside Directors, has created a Settlement Fund of $1 million for the benefit of the Settlement Class.

Plaintiffs' counsel, comprised of at least fifty groups of plaintiffs' attorneys, have filed this application for reimbursement of costs and expenses to date, of approximately $797,-161.89. Plaintiffs' counsel further request that the balance of the Fund be used as a "war chest" to fund the prosecution of the case against the non-settling defendants.

### APPLICABLE LAW

"[T]he foundation for the historic practice of granting reimbursement for the costs of litigation is part of the original authority of the chancellor to do equity in a particular situation." *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392–3, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970) (citing *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939)).

 The reimbursement of taxable expenses in federal litigation is governed by 28

---

1. Plaintiffs' counsel are not at this time seeking either attorneys' fees or reimbursement of para-

legal expenses.

U.S.C. § 1920[2] and Fed.R.Civ.P. 54[3]. However, unlike the Fed.R.Civ.P. 54(d), which entitles prevailing parties to collect taxable costs, an attorney who has created a common fund has a right to reimbursement even if the litigation does not produce, or may never produce, an actual recovery. *Id.* at 392, 90 S.Ct. at 626. Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement. *See* Herbert B. Newberg, *Attorney Fee Awards* (1986) § 2.19: "Costs Reimbursement in Common Fund Fee Determinations," at 69; *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 391–92, 90 S.Ct. 616, 625–26, 24 L.Ed.2d 593 (1970).

■ However, the costs and expenses incurred by counsel are subject to a test of relevance and reasonableness in amount. The taxation of costs lies within the trial court's discretion. *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1245 (9th Cir.1982), *remanded on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983). The judge must look at the practical and reasonable needs of the party in the context of the litigation.

■ A court assigned with the responsibility of reimbursement determination is reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question. The attorney is expected to absorb some of the cost of doing business as an attorney, and should not be allowed to shift the expense of overhead in running a legal practice to his or her client. An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client.

Finally, this Court notes that although counsel is retained by a class as a legal advocate on its behalf, an inherent conflict of interest exists between counsel and the class. Naturally, the more that the court awards to counsel, the less is left for the class. The judge in charge of the expense reimbursement process faces a heavy burden to balance the need to reimburse counsel for all reasonable expenses and costs necessary for effective representation while, at the same time, protecting the interests of the class.

## *EXPERTS*

In general, federal courts have denied expert fees beyond the statutory allowance under 28 U.S.C. § 1821.[4] However, since the Supreme Court indicated that Fed.R.Civ.P. 54 authorizes district courts to award costs not specifically enumerated in 28 U.S.C. § 1821, most jurisdictions have held that district courts have the discretion to reimburse consulting and expert witness fees. *See Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir.1982), *remanded on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983).

■ The discretion to award reimbursement for expert witness fees is not unlimited. In order for the district court to allow such expenses, the court must find that the expert testimony submitted was "crucial or indispensable" to the litigation at hand. *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 864 (9th Cir.1986); *Paschall v. Kansas City Star Co.*, 695 F.2d 322, 338 (8th Cir. 1982) *reversed on other grounds*, 727 F.2d 692 (1984). The district court should use its discretion sparingly, applying strict scrutiny

**2.** 28 U.S.C. § 1920 provides in relevant part:

a judge or clerk of any court of the United States may tax as cost the following:
(1) Fees of the clerk and marshall;
(2) Fees of the court reporter for all or any part of stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursement for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Compensation of court appointed experts, compensation if interpreters, and salaries, fees, expenses . . .

**3.** Fed.R.Civ.P. 54(d) provides in relevant part:
(d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.

**4.** 28 U.S.C. § 1821 provides reimbursement for attendance, mileage and subsistence.

in its decision to grant expert fees. *Id.* at 878.

In the present case, plaintiffs' counsel has requested reimbursement for expert fees from a common fund. The expert witnesses have not had the opportunity to testify during a trial, as is typically the case when expert witness fees are awarded to the prevailing party. Such circumstances make it more difficult to assess whether the services provided by the experts were "crucial and indispensable" to the Settlement entered into by the settling parties.

Particularly in question is the request made by the firm of Milberg, Weiss, Bershad, Hynes & Lerach for experts/consultants/investigator fees, totaling $195,812. Counsel has submitted, upon the request of this Court, additional documentation supporting the application for witness expenses. This Court does not doubt the necessity for counsel to retain expert assistance given the complexity of the litigation. However, it is the opinion of this Court that expert expenses should only be granted under the condition that the total amount of the expense request is reduced. Below is a description of the experts employed and the fees incurred.

*Princeton Venture Research, Inc.*

■ Plaintiffs' counsel request reimbursement in the amount of $91,724.91 for the expert services rendered by Princeton Venture Research, Inc. The securities and financial analysts retained provided financial analysis and investment banking and venture capital consulting. These analysts also provided counsel with their opinion on causation, materiality and damages.

At this stage of the litigation, it is difficult for this Court to determine whether all of the services provided by Princeton Venture Research, Inc. were "crucial and indispensable" to the Settlement. Furthermore, a review of all the services rendered suggests that some of the services involved legal consulting, a function for which counsel was retained. It is the opinion of this Court that counsel

should not be allowed reimbursement for retaining experts whose services, in some instances, duplicate the work assigned to counsel.

For the following reason, this Court recommends a reduction in the expenses requested by 20% to reflect the percentage of work the Court feels was duplicated.[5]

*Forensic Accountants And Rossi, Webster & O'Brien*

■ Plaintiffs' counsel request reimbursement in the amount of $18,838.63 for expert services rendered by a certified public accountant firm, Rossi, Webster & O'Brien. This accountant firm provided audit, accounting, tax and forensic accounting services. At the same time, Plaintiffs' counsel has submitted a request for $82,526.25 for services rendered by three certified public accountants employed by the law firm, at the rate of $165.00 to $205.00 per hour. Similarly, the accountants employed by counsel's firm performed various accounting services.

This Court is greatly concerned about the possibility of duplication of accounting services. It is the opinion of this Court that the total amount of reimbursement allowed be reduced for a combined total of $82,526.25.

*Investigator*

■ Counsel has also submitted a request for $2,722.50 for services provided by an investigator employed by the firm, at the hourly rate of $165.00. The investigator's services included obtaining background information and locating and contacting potential witnesses.

It is the opinion of this Court that the request for investigator expenses be granted. In a class action case, such as the one at bar, it often becomes essential to locate and contact potential witnesses and class members. The rate charged reflects the customary hourly rate for investigative services.

## PHOTOCOPYING

Requests for reimbursement for photocopying charges are regularly reimbursed,

5. The total amount awarded should equal $73,379.93, or 80% of the amount requested ($91,724.91).

although courts are careful not to "award for excessive copies, excessive costs per page, or copying of documents not reasonably related to the litigation. *See Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128 (5th Cir.1983) (copies are taxable only if necessary); *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983) (when deposition necessary to litigation, cost of copies reimbursable under § 1920(4))." Herbert B. Newberg, *Attorney Fee Awards* (1986) § 2.19: "Costs Reimbursement in Common Fund Fee Determinations," at 71, n. 200. Fees for reproduction of documents are also reimbursed under Civil L.R. 54–3(d).

■ However, expenses, such as photocopying, may only be reimbursed if this cost is not normally absorbed as part of the law firms' overhead. *Ramos v. Lamm,* 713 F.2d at 559. Furthermore, in order to be reimbursed for photocopying costs, the expense must have been necessary and incidental to effective and competent representation. *See Thornberry v. Delta Air Lines,* 676 F.2d 1240, 1244 (9th Cir.1982), *remanded on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983).

■ In the instant case, this Court does not doubt the necessity of the number of photocopies produced in order to effectuate competent representation of the class. Plaintiffs' counsel was required to make copies of the majority of the documents produced by Media Vision Technology due to the company's financial inability to produce the necessary documents requested.

However, this Court is concerned about excessive cost per page charged by many of the firms providing legal services to the class. According to the supplemental documentation submitted by plaintiffs' counsel,[6] some of the firms charged as much as $.25 per page for photocopying when the average price per page at most commercial copy shops is $.08 per page.

It is the opinion of this Court that plaintiffs' counsel request for photocopying reimbursement be granted. However, this Court recommends that the charges for inside copy

services be reduced to reflect an $.08 per page charge, while the outside copy services expenses should be granted in full.

### POSTAGE

■ With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of the litigation, or as an aspect of settlement of the case, may be taxed. The standard of reasonableness is to be given a liberal interpretation. *See Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983); *Robinson v. Ariyoshi,* 703 F.Supp. 1412, 1436 (D.Haw.1989), *rev'd on other grounds,* 933 F.2d 781 (1991).

There seems to be a general consensus among jurisdictions to reimburse counsel for postage expense. In *Dowell v. City of Apopka,* 698 F.2d at 1192, the court allowed reimbursement for postage as a taxable expense since it is not unusual for courts to tax postage. Similarly, in *Miller v. Carson,* 628 F.2d 346, 349 (5th Cir.1980), the trial court did not err in its decision to tax postage since the expense was not already included in the fee as a part of office overhead. Finally, the district court in *Greenspan v. Automobile Club,* 536 F.Supp. 411, 417 (E.D.Mich.1982), specifically held that the cost of mailings to class members were reimbursable.

■ In the present litigation, although the postage reimbursement requested seem particularly high, this is most likely due to the size of the class and the nature of the litigation. This Court recommends that the request for reimbursement for postage expenses be granted in full.

### TELEPHONE

■ Reasonable out-of-pocket expenses, such as telephone costs, incurred by the attorney, which are normally charged to the fee-paying client, in the course of providing legal services, are recoverable. *See Northcross v. Board of Educ.,* 611 F.2d 624, 639, *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1979); *Ramos v. Lamm,* 713

---

**6.** This Court issued an Order on October 18, 1995, requesting supplemental information regarding the number of pages and price per page charged by each firm.

F.2d 546, 559 (long distance telephone expenses should be allowed as fees only if such expenses are usually charged separately in the area).[7]

Although not all jurisdictions consider long distance phone calls taxable costs, the Ninth Circuit adopted the *Northcross* holding when the court decided that reasonable telephone costs were reimbursable. *Thornberry v. Delta Air Lines*, 676 F.2d at 1244; *See also Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.1991) (expenses incurred in litigation should be taxed if billed to fee-paying client).

In the present litigation, the total amount requested by plaintiffs' counsel for telephone/fax expenses comprises a significant portion of the application for costs and expenses. Given that the Ninth Circuit supports the reimbursement of expenses for telephone use connected with the litigation, the application for telephone expenses before the Court, including expense incurred for faxes, should be granted.

This Court recommends that the request for telephone/fax expenses be granted in full.

### *TRAVEL*

The reimbursement for travel expenses, both under 28 U.S.C. § 1920 and Fed. R.Civ.P. 54(d), is within the broad discretion of the Court. *See Loewen v. Turnipseed*, 505 F.Supp. 512 (1980). Travel reimbursements are generally allowed on a case by case approach, with each court making the decision on the basis of the circumstances and equities at hand. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2668 at 142 (1973).

A common response by the courts has been to flatly deny the requests for reimbursement, tending to lump such expense categories as travel, meals, hotel accommodations, and transportation as part of the attorney's overhead expense. *See City of Honolulu v. Rivera Davila*, 438 F.2d 1367, 1371 (1st Cir.1971); *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1170, *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (7th

Cir.1968). Many courts have denied travel expenses after finding there was no reason for the attorneys requesting reimbursement to have employed counsel from outside the area in which the litigation was conducted. *See Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983).

Although not much case law is available from the Ninth Circuit, California courts seem inclined to allow travel expenses, as long as they are "reasonable and necessary". *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir.1982), *remanded on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983).

Travel expenses are particularly important in the litigation given that the majority of the firms retained as counsel for plaintiffs reside outside of California. Counsel has clearly done a great deal of traveling, as evidenced by the high reimbursement requests submitted to the Court.

In evaluating the travel expense application, this Court was concerned with assessing whether the excessive travel expenses incurred were reasonable in light of the counsel's necessity to travel. Finding the initial lump sum figures submitted by plaintiffs' counsel unhelpful, this Court issued an order requiring counsel to submit a detailed documentation of the number of flights undertaken, destination, cost per flight, necessity of the trip, as well as cost for meals and hotel accommodations.

Although this Court recommends granting travel reimbursement expenses, it is the opinion of this Court that the total amount of reimbursement requested be reduced to reflect the per diem travel expenses ordinarily reimbursed to all federal government employees, including judiciary personnel and United States government attorneys, for business-related travel. The federal government guidelines are outlined in the Administrative Manual, *Guide To Judiciary Policies And Procedure*, Volume III, Chapter VI, Section 7, rates effective as of January 1, 1995.

---

**7.** Although the cases cited refer to telephone expenses, it seems only reasonable that in our day and age fax expenses should be equally reimbursed. In fact, it is often more economical to send a fax than to place a long distance telephone call.

Under the above guidelines, the per diem locality rate for San Francisco is $137.00. A traveler may elect to claim reimbursement on an actual expense basis in lieu of claiming reimbursement on a per diem basis. Reimbursement is for the actual and necessary expenses the traveler incurs, not to exceed 150% of the maximum per diem rate, or $205.50 for the San Francisco locality.

This Court recommends setting the limit for plaintiffs' counsel's travel reimbursement at the rate of the traveler's actual expenses, not to exceed the $205.50 per diem locality rate for San Francisco. The per diem allowance includes all reasonable charges for meals, lodging, laundry, cleaning and pressing of clothes, tips, as well as transportation between places of lodging or business and places where meals are taken.[8] Pursuant to the guidelines, this Court recommends applying the M & IE (meals and incidental expenses) rate applies for all actual travel expenses, not to exceed $34.00 per diem, when a lodging charge was not incurred.

As for the future, a way for plaintiffs' counsel to meet the "reasonable and necessary" standard is by making a serious effort to assign work in such a manner as to minimize the need for extensive travel. When travel does become "necessary", counsel should ensure that the airfare and hotel accommodations are charged at tourist or economy rates. If counsel anticipates the need for extensive travel, a clearance from the Court should be obtained prior to incurring the expense.

### MESSENGER SERVICES

Jurisdictions are split over whether to award reimbursement for messenger services. Some courts have determined that overnight mail and commercial delivery services are reimbursable "when necessary." *Connor v. Winter*, 519 F.Supp. 1337, 1345–46 (S.D.Miss.1981) (express mail service); *Population Services Intl. v. Carey*, 476 F.Supp. 4, 8 (S.D.N.Y.1979) (messenger fees). Other jurisdictions have held that private express mail services are a part of the firm's overhead, and should be absorbed as the cost of doing business as an attorney. *See Loewen v. Turnipseed,* 505 F.Supp. 512, 517–19 (N.D.Miss.1980).

The Ninth Circuit adopted the latter approach finding that routine messenger services are a part of overhead expenses, and, as such, are not recoverable. *Sousa v. Miguel,* 32 F.3d 1370, 1375 (9th Cir.1994).

Given the Ninth Circuit's position regarding the reimbursement for messenger and delivery services, plaintiffs' counsel requests for costs associated with messenger services should be denied.

### COMPUTERIZED LEGAL RESEARCH

Jurisdictions are also split on the issue of whether computerized legal research is a reimbursable expense. Several courts have determined that computerized legal research is a component of attorneys' fees and cannot be independently taxed as a separate item of cost. *See Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 695 (8th Cir.1983) (computerized legal research is part of attorney fees); *Standley v. Chilhowee R–IV School Dist.,* 5 F.3d 319, 325 (8th Cir.1993) (computer-based legal research may not be added to fee award); *Ortega v. City of Kansas City,* 659 F.Supp. 1201, 1218 (D.Kan. 1987) (court refused to tax computer-assisted legal research expenses).

Other jurisdictions have decided that computerized legal research is a reimbursable cost since it is a reasonable cost incurred in litigating a case. *See Wehr v. Burroughs Corp.,* 619 F.2d 276, 285 (3rd Cir.1980); *United Nuclear Corp. v. Cannon,* 564 F.Supp. 581, 591–92 (D.R.I.1983). The courts' rationale for allowing computerized legal research as a separate expense, is that the "[u]se of computer-aided legal research is certainly reasonable, if not essential, in con-

---

8. This Court recommends that all lodging, meal, and incidental personal expenses be calculated according to the $205.50 per diem maximum rate. All other meal expenses should be denied. Actual expenses below the per diem rate should be paid in full. The reimbursement for airline tickets should not be included in the per diem rate, and should be granted separately. Similarly, the reimbursement for cab/parking/public transportation services should not be included in the per diem rate, and should be granted separately.

temporary legal practice." *Wehr v. Burroughs Corp.*, 619 at 285.

At least one district court in the Ninth Circuit has adopted the latter view. *See Robinson v. Ariyoshi*, 703 F.Supp. at 1436. The district court recognized that various courts have not agreed on whether computer-aided legal research should be taxed as a separate cost. *Id.* at 1436. However, the court agreed with *United Nuclear Corp. v. Cannon*, 564 F.Supp. at 591–92, and held that, "Lexis is an essential tool of a modern efficient office. As such, it saves lawyers' time by increasing the efficacy of legal research ..." *Robinson* at 1436–37. Thus, the court in *Robinson* determined that computerized legal research should be allowed as a taxable cost. *Id.*

Given the complexity of the issues, this Court does not doubt that computerized research played an essential role in the litigation at hand. The request for computerized legal expenses should be granted in full.

### DEPOSITIONS

■ Costs of depositions are recoverable only if necessarily obtained for use in the case. *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 177–78 (9th Cir. 1990). However, "[e]xcept as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel shall ... be allowed." *Id.* at 178.

■ Although the Ninth Circuit has disallowed deposition expenses for depositions not used at trial, the allowance of the request is ultimately within the discretion of the trial court. *Washington State Dept. of Transp. v. Washington State Natural Gas Co.*, 51 F.3d 1489, 1501 (9th Cir.1995) According to the Ninth Circuit, the trial court does not abuse its discretion in awarding deposition costs so long as the court makes an independent determination that the deposition costs were necessary and the court details why each deposition was necessary. *See Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1439 (9th Cir.1994).

9. There was also a request for "meetings" ex-

■ The request for deposition expenses is not before the Court at the present time, for as plaintiffs' counsel has indicated in its application for costs and expenses, the deposition phase is in its beginning stages. Plaint.'s Memo. of P & A at 4. It is not clear at this time whether the depositions conducted were essential to the Settlement.[9]

This Court recommends that at this stage of the litigation, the Court should deny the requests for expenses related to depositions and meetings, including transcript and witness fees. An application for fees associated with depositions may be requested at the end of the deposition stage.

### FILING FEES

■ Costs not normally absorbed as part of law firm overhead may be reimbursed when incurred by the attorney while in the course of providing legal services if such costs are normally charged to the client. *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983). Reimbursement for filing and service of process fees are also allowed in this district under Civil L.R. 54–3(a).

■ A filing or serving fee is unquestionably a necessary expense of every litigation. It seems that reasonable filing fees are reimbursable as long as the fees are billed to the client(s) as separate expenses.

Given the above, this Court recommends that plaintiffs' counsel's request for filing and service fees should be granted in full. However, this Court recommends denying filing fees to several of the firms who have managed to combine their request for filing fees expenses together with attorneys services and witness fees. At this time, such requests should be denied until the firms separate the fees requested.

### OTHER EXPENSES

In addition to the foregoing costs, plaintiffs' counsel seeks reimbursement for "other" expenses including: special secretarial/word processing, velobinding, visual equipment, books/publications/subscriptions and office supplies.

penses, which should be denied.

**1372**

As previously discussed, within the discretion of the trial judge, litigation related costs are reimbursable as long as they are necessary expenses incurred in furnishing effective representation, and are not regarded by the court as overhead expenses absorbed by counsel. *See Thornberry v. Delta Air Lines*, 676 F.2d at 1244.

This Court recommends that plaintiffs' counsel request for the above-mentioned expenses be denied. These expenses should be absorbed by counsel as part of the cost incurred in operating a legal practice.

However, each firm's contribution to plaintiffs' litigation fund (assessment fees) clearly should be reimbursed, as such expenses were reasonably and necessarily related to the creation of the Settlement Fund.

### CONCLUSION

This Court is greatly concerned about the excessive costs requested as reimbursement expenses by plaintiffs' counsel. It is highly unlikely that the class members intended to reimburse counsel for first class airplane tickets, luxury hotel accommodations, and gourmet dinner meetings.[10] This Court is also troubled by some of the firms' attempt to make a profit on nonlegal services that are ordinarily absorbed as overhead expenses.

This Court further recommends that the Court order plaintiffs' counsel to submit all future applications for costs and expenses in a detailed format, which breaks down the amounts requested and outlines the necessity of each expense. This Court found the lump sum figures initially submitted by plaintiffs' counsel unhelpful, forcing this Court to issue several orders for supplemental documentation.

Finally, this Court would like to remind counsel of the District Court's (Hon. Eugene F. Lynch) July 14, 1995 Order, which specifically addressed the issue of future costs and expenses. This Court recommends that with respect to counsel's future travel plans, the term "unusual expenditures," referred to in the July Order, should specifically include

any extensive travel anticipated by counsel. Counsel should be ordered to obtain a clearance from the Court *before* such expenses are incurred. A similar recommendation applies to counsel's use of nonlegal experts.

Respectfully submitted,

DATED: December 15, 1995.

---

**10.** This Court finds it unacceptable that some firms expect reimbursement for first class airline tickets or last minute ticket purchases which doubles the cost of airfare, luxury hotel accommodations of up to $278.85 per night, or $646.06 dinner meetings at $72.00 per person.